**FILED**

SEP 2 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA    :
    :
v.    :    Criminal No. 06-168-02 (TFH) **UNSEALED**
    :
ANDY ARANAS,    :
    :    Plea Hearing Date: September 21, 2006
Defendant.    :
    :    **UNDER SEAL**

### GOVERNMENT'S PROFFER OF EVIDENCE

Defendant Andy Aranas, agrees to admit his guilt and enter a plea of guilty to Count One

of his Indictment which charges him with, Conspiracy to Distribute and Unlawful Possession

With Intent to Distribute 50 Grams or More of Methamphetamine, also known as "Ice," in

violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(viii).

Defendant Aranas understands that pursuant to 21 U.S.C. 841(a)(1) and 21 U.S.C.

841(b)(1)(A)(viii), that Count One of his Indictment carries a penalty of a term of imprisonment

of not less than 10 years or more than life, a fine of not more than $4,000,000.00, or both, a

period of supervised release of at least 5 years.  In addition, Defendant Aranas agrees to pay a

special assessment of $100.00 for his felony conviction to the Clerk of Court of the United States

District Court for the District of Columbia  prior to the date of sentencing or as directed by a

Judge of the District Court.  Defendant Aranas further understands that the United States

Sentencing Guidelines Manual ("Sentencing Guidelines") will apply to determine Defendant

Aranas' guideline range, and that pursuant to Section 5E1.2 of the Sentencing Guidelines, the

Court may also impose a fine that is sufficient to pay the federal government the costs of any

imprisonment, term of supervised release, and period of probation.

**UNSEALED**

Defendant Aranas agrees and will acknowledge at the time of the plea of guilty to the criminal charges stated above that, pursuant to Section 1B1.3 of the Sentencing Guidelines, Defendant Aranas is accountable for more than 2 kilograms of methamphetamine, also known as "Ice," which quantity represents the total amount involved in Defendant Aranas' relevant criminal conduct, including amounts Defendant Aranas distributed or possessed with intent to distribute and amounts distributed or possessed with intent to distribute by co-conspirators of Defendant Aranas, pursuant to jointly undertaken criminal activity that was reasonably foreseeable by Defendant Aranas and within the scope of Defendant Aranas' conspiratorial agreement. Pursuant to U.S.S.G. section 2D1.1(b)(1), your client's offense level is increased by two levels based on the firearms that he and his coconspirator Wesley Markland possessed on November 19, 2004, in the furtherance of a drug trafficking offense in this case. However, Defendant Aranas must understand that should he be determined to be a "Career Offender," which we believe he is, then his guideline range may be substantially higher.

### ***Elements of the Offense***

#### Conspiracy Count One

The essential elements of the offense of Conspiracy to distribute and possess with intent to distribute, in violation of 21 United States Code, § 846, each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

(1) that an agreement existed between two or more persons to commit the crimes of

distribution and possession with intent to distribute;

(2) that the Defendant intentionally joined in that illegal agreement.

*See United States v. Lam Kwong Wah*, 924 F.2d 298, 302-303 (D.C. Cir. 1991); *United States v.*

*Pumphrey*, 831 F.2d 307, 308-309, 265 U.S. App. D.C. 306, 307-308 (D.C. Cir. 1987). These

cases hold that the offense of violating 21 U.S.C. § 846 by conspiring to violate federal narcotics

laws does not include an element of commission of an overt act in furtherance of the conspiracy.

The law makes methamphetamine, also known as "Ice,"a controlled substance.

### Possession With Intent To Distribute

#### Alternative B -- 21 U.S.C. § 841(a)(1)

The essential elements of the offense, each of which the government must prove beyond a

reasonable doubt, are:

1.    That the Defendant possessed a controlled substance;

2.    That the Defendant did so knowingly and intentionally.  This means consciously,

voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

3.    That when the Defendant possessed the controlled substance, he had the specific

intent to distribute it.  Distribute means to transfer or attempt to transfer to another person.  The

law makes methamphetamine, also known as "Ice,"a controlled substance.

### Distribution of Controlled Substances

#### Alternative B - 21 U.S.C. § 841(a)(1)

The essential elements of this offense, each of which the government must prove beyond

a reasonable doubt, are:

1.     That the Defendant distributed a controlled substance. Distribute means to transfer or attempt to transfer to another person. The government need not prove that the Defendant received or expected to receive anything of value in return.

2.     That the Defendant distributed the controlled substance knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently. The law makes methamphetamine, also known as "Ice,"a controlled substance.

### *Statement of Fact*

Defendant Aranas, and several associates, both known and unknown to the United States, have conspired to distribute and possess with intent to distribute methamphetamine, also known as "Ice," a controlled substance, in violation of Title 21 United States Code §§ 841(a)(1) and 846. This conspiracy has venue and jurisdiction in the District of Columbia. The substances seized and distributed during this investigation were analyzed by the Drug Enforcement Administration Laboratory and were determined to in fact be methamphetamine, also known as "Ice," a controlled substance. The methamphetamine, also known as "Ice,"utilized during the charged conspiracy could be smoked and ingested by various methods to cause a narcotic or drugged effect. Defendant Aranas conspired with various individuals, both known and unknown to the United States to include, but not limited to: Stacy Henderson and Wesley Markland.

**Confession/Interview Stacey P. Henderson:**

Between March 2004 through November 2004, within the District of Columbia and elsewhere, Henderson and Aranas conspired with other persons to distribute and possess with the intent to distribute pure methamphetamine or "Ice" and to illegally traffic firearms from the Commonwealth of Virginia and elsewhere into the District of Columbia. The investigation

established that Henderson, Aranas and other persons, were responsible for trafficking and illegally obtaining more than 4500 grams of pure methamphetamine or Ice and a cache of firearms.

On January 31, 2005, ATF Special Agents conducted a proffer interview with Stacey P. Henderson at the United States Attorneys Office in Roanoke, Virginia. Henderson began the interview by talking about the firearms found in the vehicle the night he was stopped and arrested by Virginia State Police. Henderson stated that he is a very strong believer in his Second Amendment rights, and has always loved shooting firearms. He stated that the firearms were not in the vehicle to protect the "Crystal Meth" he was carrying, but they were only there because he likes guns. Henderson provided information about Wesley Markland, who he stated was his main supplier of "Crystal Meth." Henderson stated that Markland was wanted by United States Customs. He met Markland around February 2004 through Mario (last name unknown), and began buying "Crystal Meth" from Markland in Washington, D.C.

Henderson stated that Markland, on at least one occasion, sent a guy named Rob to Canada to purchase a large quantity of GLB and to bring it back to him in Washington, D.C., so that Markland could make it into GHB. Markland travels to San Francisco, CA to get large quantities of "Crystal Meth." On September 9, 2004, Henderson traveled to San Francisco with Markland. Both flew out of Dulles Airport to Oakland, CA on Jet Blue Airlines. They stayed at the Crowne Plaza in San Francisco and checked in using Stacey Henderson's name. Markland's supplier, Derek (last name unknown), met them at the hotel room to do the deal. Markland purchased 1 pound of "Crystal Meth" for $14,500.00. After the purchase, Markland emptied a container of Epsom salt and placed the "Meth" into the container. He then placed the Epsom salt

container into his checked luggage and was able to get it back to Washington undetected. Henderson advised that Markland makes a trip to San Francisco every 5 to 6 weeks to pick up a pound of methamphetamine aka Ice. On most trips, Markland uses FedEx and ships the "Meth" back to Washington, D.C.

Before meeting Markland, Henderson stated that he only snorted "Meth" and had his habit under control. Markland talked Henderson into smoking it, and he began using more and more. He stated that at first he would purchase an 8-ball from Markland, which would last him about 3 weeks. Henderson stated that he was paying Markland $400 per 8-ball, but if he purchases more than one 8-ball the price would be cheaper. Henderson explained that he began selling enough of what he purchased to pay for it, and he smoked the rest for free. Just before Henderson was arrested for the current incident, he had purchase 3 or 4 8-balls from Markland. Henderson stated that Markland vacuum sealed both the "Crystal Meth" and currency, usually in $1000.00 bundles, and kept it in a safe, which was located in his bedroom. He also reported that Markland used cash to purchase his airline tickets and likes using prepaid MasterCards. Henderson also provided information about Van (last name unknown), who lived at the corner of , Washington, D.C. Henderson purchased "Crystal Meth" from Van several times, before he met Markland. Van dealt Ecstasy, Meth, GHB, and various pills. Henderson initially bought a gram or 2 from Van, before moving up to an 8-ball for $400.00. Henderson was unsure if Van was still in business, since he hasn't dealt with him in quite a while. He stated that Van always got his "Meth" from Atlanta, and paid someone to drive down and get it for him. Henderson explained that Markland's product was much better quality than Van's, so once he bought from Markland, he never went back to Van.

When Henderson was questioned about firearms being used to purchase drugs, he stated he never traded a firearm for drugs. He again stated that he just believes in the 2nd Amendment right to carry a firearm. Henderson stated that he had never seen Markland carry a firearm. Henderson stated that he has only purchased two firearms in his whole life, and both of those were bought from an individual and not a dealer. On April 13, 2005, DEA TFO Valley provided copies of the DEA Controlled Substance Analysis for the Controlled Substances that Stacey Pahl Henderson possessed on November 11, 2004. One analysis identifies the item as Methamphetamine Hydrochloride and the other is identified as Psilocybin.

**Confession/Interview Andy Aranas:**

On August 4, 2005, at approximately 5:45 p.m., ATF Special Agents visited the residence of Andy Aranas at Virginia Beach, Virginia. As Agents approached the residence Aranas was the rear passenger in a sport utility vehicle (SUV) being driven by an acquaintance of Aranas. The Agents asked to enter Aranas' residence so that he could be interviewed. Aranas confessed that he had previously purchased one firearm, that he had sold to a guy identified as "Wes" through Stacy Pahl Henderson, less than a week after Aranas purchased the firearm. Aranas admitted purchasing the firearm in September, October, or November of 2004. Aranas admitted that the firearm was a Smith & Wesson .45 caliber model that he paid approximately $250.00 for at Dr. Bob's gun shop located in Norfolk, Virginia.

Aranas stated that he met Henderson in college in Richmond, and that both he and Henderson were Disk Jockeys. Aranas recalled Henderson asking Aranas to purchase a firearm for a person only identified as "Wes." Aranas stated that Henderson was known to abuse crystal methamphetamine and was known to associate with Wes. Wes was a known Methamphetamine

dealer in Washington, D.C. Aranas stated that Henderson wrote down on a piece of paper what

firearm Henderson wanted Aranas to purchase for his friend to Wes in Washington, D.C. Aranas

stated that he believed Henderson did not want to purchase a firearm himself was because he did

not want Wes to have a record of the transaction.

Aranas stated that he purchased the Smith & Wesson firearm at Dr. Bob's gun shop

located on Granby Street, in Norfolk, Virginia. Shortly after purchasing the firearm, Aranas

stated that he met with Henderson to transfer the firearm, eventually to be given to Wes. Aranas

stated after a couple of months after the purchase of the firearm, Aranas and Wes exchanged a

bill of sale. Aranas stated that Henderson asked him to purchase another firearm at the A&P gun

shop on Lynnaven Road, in Virginia Beach, Virginia. Aranas stated that he was denied the sale

of the second firearm because the transaction was attempted only two weeks after the first

firearms transaction. After the transaction was denied, Aranas stated that he gave the money

back to Henderson. Aranas stated that Henderson provided him money to purchase the firearms.

Aranas stated that he transferred the gun to Henderson at Aranas' friend's house minutes after

leaving the gun store. Aranas stated that Henderson told him that Wes needed a firearm for

protection because he was a crystal methamphetamine dealer.    Aranas stated that he was not

"clear" regarding question #12 on ATF Form 4473, he stated, "all he knew was that I was to buy

the gun and sign the bill of sale." Aranas stated that Henderson told him "to trust him, and that

Wes would keep it in his house and it would never leave." Aranas stated that he wasn't really

asking for anything in return for purchasing the firearm, he might have only received some gas

money.

Aranas acknowledged his signature on the bill of sale from Aranas to Wes, acknowledged the completed ATF Form 4473's, and positively identified a photograph that SA Meixner showed Aranas as Henderson. Aranas stated that he had heard that Wes was in jail, and that Henderson was expected to be sentenced soon. Aranas stated Henderson has requested Aranas testify in his sentencing as a character witness.

**Confession/Interview Wesley Markland:**

On January 27, 2005, at approximately 1:00 p.m., ATF Special Agents interviewed Wesley Markland at the United States District Courthouse, for the District of Columbia located at 333 Constitution Avenue, N.W., Washington, D.C. Markland stated that he was addicted to methamphetamine for several years, and has sold methamphetamine and GHB/GBL to support his drug habit and living expenses. Markland admitted to mailing large quantities of GHB/GBL and methamphetamine to himself and to associates addresses for his trafficking business. Markland admitted to illegally importing and trafficking GHB/GBL and methamphetamine from Canada and some European countries. Markland stated that he has resided in various locations in the Northwest area of Washington, D.C., and most of his customers were from Washington, D.C.

Markland identified the source of the Smith & Wesson .40 caliber firearm that was in his possession as Stacey Paul Henderson. Markland described Henderson as a white male from the Virginia Beach area of Virginia. Markland stated that Henderson was addicted to methamphetamine and uses approximately one gram or more per day. Markland stated that

Henderson was his most distant customer. Markland stated that Henderson had strong anti-government views, and offered Markland a book entitled "Behold a Pale Horse." Markland stated that Henderson loved handguns, and was always armed.

Markland stated that just before he was arrested, Henderson sold Markland the Smith & Wesson .40 caliber handgun for $400.00 and Markland gave him an eight ball of methamphetamine (eight ball is usually 3.5 grams). Markland stated that he typed a receipt showing that the firearm was purchased from Andy Aranas, not Henderson to protect Henderson. Markland stated that he did not use the gun, and had previously been to a shooting range with Henderson in the Virginia Beach area. Markland confessed that he and Henderson regularly discussed the need to and ultimately did possess firearms to protect their illegal methamphetamine operation from the police and from other persons who might seek to rob them for their illicit methamphetamine and profits therefrom.

On November 19, 2004, federal agents, executed a search at Markland's residence and seized 40 grams of crystal methamphetamine aka Ice, several bottles of GHB/GBL, the .45 caliber Smith & Wesson firearm, marijuana, $24,000.00, in U.S. currency, a several high value items which were purchased with the illegal proceeds of drug/narcotics distribution.

<u>Defendant Andy Aranas' Acceptance</u>

I have read this factual proffer summary and have discussed it with my attorney, Jerry

Phillips, Esquire. I fully understand this proffer and agree that it is an accurate summary of the

facts of my case and I agree to it without reservation. I do this voluntarily and of my own free

will, intending to be legally bound. No threats have been made to me nor am I under the

influence of anything that could impede my ability to understand this agreement fully. I am

pleading guilty because I am in fact guilty of the offense identified in this factual proffer

summary.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been

made or entered into in connection with my decision to plead guilty except those set forth in my

plea agreement. I am satisfied with the legal services provided by my attorney in connection with

my plea agreement and matters related to it.


Date: _9-21-06_                            _____
                                            Defendant Andy Aranas

### ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this factual proffer summary, I have reviewed them

with my client, and discussed the provisions of the summary and the plea agreement with my

client, fully. These pages accurately sets forth the summary of facts in my client's case.


Date: _9-21-06_                            _____
                                            Jerry Phillips, Esquire
                                            Attorney for the Defendant Andy Aranas


Page 11 of 12

WHEREFORE, it is respectfully requested that this pleading be made part of the record.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. Bar No. 246-470

By _____

MARTIN DEE CARPENTER
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this pleading has been mailed, postage prepaid, this 18th day of September, 2006, to counsel for Defendant Aranas, Jerry Phillips, Esquire, Via first class mail, postage prepaid, and by facsimile to (703) 385-2745, Suite No. 100, 10513 Judicial Drive, Fairfax, Virginia 22030; Office No. (703) 691-4100, Mobile No. (703) 598-2338.

_____

MARTIN DEE CARPENTER, Bar No. 431-211
Assistant United States Attorney
Organized Crime & Narcotics Trafficking Section
555 4th Street, N.W., Room No. 4116
Washington, D.C. 20530
(202) 514-7063